RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0210P (6th Cir.)
File Name:  00a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*                                    No. 98-6042

LARRY LAMONT MOSS,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20094—Julia S. Gibbons, Chief District Judge.

Argued:  September 15, 1999

Decided and Filed:  June 28, 2000

Before:  BATCHELDER and GILMAN, Circuit Judges;
HOOD, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Thomas J. Gibson, OFFICE OF THE FEDERAL
PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF
TENNESSEE, Memphis, Tennessee, for Appellant.  Brian J.

_____

[*] The Honorable Denise Page Hood, United States District Judge for
the Eastern District of Michigan, sitting by designation.

Quarles, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Thomas J. Gibson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Brian J. Quarles, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

HOOD, D. J., delivered the opinion of the court. BATCHELDER, J. (p. 11), delivered a separate opinion concurring in both the opinion of the court and Judge Gilman's separate concurrence. GILMAN, J. (pp. 12-18), delivered a separate opinion concurring in the judgment.

————————

## OPINION

————————

DENISE PAGE HOOD, District Judge. Defendant Larry Moss appeals his jury conviction for possession of cocaine with intent to distribute in violation of 18 U.S.C. § 841(a)(1), and his sentence of 262 months imprisonment, and five years supervised release. Moss claims the district court committed error by: 1) dismissing his first indictment without prejudice for violation of the Speedy Trial Act; 2) not dismissing his second indictment for violation of the Speedy Trial Act and his Sixth Amendment right to a speedy trial; 3) denying his motion to suppress; and 4) enhancing his sentence for obstruction of justice. For the reasons that follow, we **REVERSE** the district court's decision to dismiss the first indictment without prejudice and do not reach the remaining issues on appeal.

### I. BACKGROUND

On March 22, 1995, three narcotics officers from the Shelby County Sheriff's Department executed a search warrant at a residence located on 1068 National in Memphis, Tennessee, and brought along "Torque," a narcotics detecting dog. As the officers entered the residence and began

the delay in this case, would give adequate effect to the mandate of Congress as set forth in the Speedy Trial Act. As far as can be discerned from the record, the district court took Moss's motion to suppress under advisement and then simply sat on the case for a year. These circumstances call for a dismissal of the indictment with prejudice, and the district court abused its discretion in finding to the contrary.

### III.

I recognize full well the unfortunate irony of dismissing with prejudice a case in which the defendant was convicted and sentenced to a very substantial term of incarceration, all in order to enforce a statute that was enacted in large part to protect the public from dangerous offenders released on bail. But in enacting the Speedy Trial Act, Congress made plain its belief that bringing defendants to trial promptly is essential to the interests of justice, and that the remedy of dismissal—and in some cases dismissal with prejudice—is necessary to carry out its mandate. I therefore concur in the judgment directing the district court to dismiss Moss's indictment with prejudice.

handcuffing the people inside, Larry Moss exited from a bedroom in the house. One of the officers handcuffed and patted down Moss and located a tenth of a gram of crack cocaine in his pocket. The officer noticed that Moss' hands were wet. In one of the bedrooms, the officers found a fish tank which contained water, rocks, and a live alligator. Torque, the narcotics detecting dog, indicated that narcotics were in the fish tank. While one officer restrained the alligator, another officer searched the inside of the tank. Beneath the rocks and submerged in water were several bags and a plastic container with crack cocaine inside. In all, the officers seized 79.5 grams of cocaine and two digital scales.

Moss was arrested and made his initial appearance before a magistrate judge on March 23, 1995. The court granted Moss two continuances to allow him to retain counsel. On March 28, 1995, a magistrate judge appointed counsel for Moss and set a probable cause/bail hearing for the next day. Moss appeared the next day with retained counsel. The court found probable cause, and Moss was detained pending trial.

On April 17, 1995, a federal grand jury in the Western District of Tennessee indicted Moss on one count of possession of a controlled substance, 79.5 grams of cocaine base, with intent to distribute in violation of 18 U.S.C. § 841(a)(1). Moss was granted a number of continuances to allow him to retain counsel and was arraigned on May 16, 1995. Moss entered a plea of not guilty. Moss' retained counsel moved to withdraw on June 22, 1995, and the motion was granted on June 23, 1995. Moss appeared before the district court on July 5, 1995, to inform the court of the status of his search for a new attorney and insisted that he would retain counsel. Moss was told to report back on July 7, 1995, but did not report until July 23, 1995. At that time, he informed the court that he had not yet retained counsel, but he still desired to do so. The court instructed Moss to report back on August 14, 1995. On August 17, 1995, Moss reported that he had retained an attorney. The new attorney filed an appearance on August 25, 1995, and requested a number of continuances in order to prepare for trial. Prior to

the date set for trial, the defense attorney made an oral motion to withdraw on October 27, 1995. The motion was granted, and the Federal Defender's Office was appointed to represent Moss.

On November 8, 1995, Moss filed a motion to suppress the evidence seized by the Shelby County Sheriff's Department, claiming that the officers violated the "knock and announce" rule. The motion was referred to a magistrate judge, but the order of reference was rescinded when the case was transferred to a different district judge. An evidentiary hearing on the motion was set for January 30, 1996. The trial date was adjourned several times and eventually set for March 18, 1996.

The court held the evidentiary hearing on the motion to suppress on January 30, 1996. At its conclusion, Moss' attorney requested that the court delay its ruling until after the transcripts of the hearing had been prepared and both parties had an opportunity to respond. The motion was taken under advisement, and the court set a briefing schedule. Moss was to file a brief by February 22, 1996, and the Government was to respond by March 1, 1996. Moss responded on February 29, 1996; the Government did not respond. The trial was again adjourned several times while awaiting the court's ruling on the motion to suppress. The district court never rendered a decision.

One year later, on January 29, 1997, Moss brought a motion to dismiss the indictment with prejudice for violation of the Speedy Trial Act. On February 25, 1997, Moss filed a motion to set a hearing date on the motion to dismiss. The Government filed a response to the motion on March 4, 1997, conceding that the Speedy Trial Act had been violated as more than 70 non-excludable days had accumulated, but the Government insisted that the dismissal should be without prejudice. On April 2, 1997, the district court agreed with the Government and dismissed the indictment without prejudice.

On April 30, 1997, Moss was reindicted on the same single count of possession with intent to distribute 79.5 grams of

expressly provided for both forms of dismissal suggests rather strongly that Congress contemplated that there were going to be cases in which dismissal with prejudice would be the only reasonable option. In light of the truly egregious and inexplicable violation of the Act under the present circumstances, I believe that this is one of those cases.

The district court's delay in this case was completely unacceptable, and more than three years later, it is still unexplained. Its order dismissing the case without prejudice recites the correct legal standard, but then does little to apply the facts of this case to that standard, and it is, therefore, not entitled to the deference to which it might otherwise be due.

Even though the court's opinion states that "a district court that does not set forth written findings with regard to these factors has abused its discretion and will be reversed," Op. at 7 (quoting *United States v. Pierce*, 17 F.3d 146 (6th Cir. 1994) (citing *Taylor*, 487 U.S. at 336)), I do not understand our decision today, or this court's decision in *Pierce*, to require dismissal with prejudice simply because a district court has not set forth written findings, or has set forth written findings that are insufficiently detailed. If the problem were simply that the court failed to set forth sufficiently detailed findings, the appropriate remedy would ordinarily be a remand to the district court with instructions to provide findings that are adequate. *See United States v. Fox*, 788 F.2d 905, 909 (2d Cir. 1986).

Instead, I believe that the indictment must be dismissed with prejudice because there is no conceivable justification for the district court's complete inactivity while Moss's motion to suppress was under advisement, and because it clearly appears to have been the result of "precisely the sort of administrative neglect which the Speedy Trial Act was intended to discourage and sanction," *United States v. Angelini*, 553 F. Supp. 367, 369 (D. Mass. 1982). Even taking into account the seriousness of the offense with which Moss was charged, I do not believe that dismissal without prejudice, considering the length and lack of justification for

demonstrating that "Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation." *United States v. Taylor*, 487 U.S. 326, 334 (1988). Instead, the Speedy Trial Act leaves the decision to the district courts, directing them to consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). When a district court properly considers those factors and its supporting factual findings are not clearly erroneous, "the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Taylor*, 487 U.S. at 337.

Nevertheless, "discretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Id*. at 336 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (Marshall, C.J.))). Indeed, in order to ensure that the Speedy Trial Act is administered effectively, and to preserve the possibility of meaningful appellate review, a district court is required to "carefully express its decision whether or not to bar reprosecution in terms of the guidelines specified by Congress." *Id*. at 343. In the present case, the district court's two-page order, which for the most part consists simply of bare conclusions stating why dismissal without prejudice was the more appropriate option in this case, does not comply with this standard and makes meaningful appellate review nearly impossible.

I recognize that the Speedy Trial Act generally does not prefer either dismissal with prejudice or dismissal without prejudice as a remedy, and that the Supreme Court has specifically admonished that "[d]ismissal without prejudice is not a toothless sanction" because "it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Taylor*, 487 U.S. at 342. But the fact that Congress

cocaine in violation of 18 U.S.C. § 841(a)(1). Moss made an initial appearance, counsel was appointed, and Moss was released on bond on June 2, 1997. On July 28, 1997, Moss filed a motion to dismiss the second indictment with prejudice for violation of the Speedy Trial Act, a motion to dismiss the second indictment for violation of the Sixth Amendment right to a speedy trial, and a motion to suppress evidence for lack of probable cause and violation of the "knock and announce" rule. The motions were referred to a magistrate judge who issued a report and recommendation denying all three motions. The district court, after overruling Moss' objections, adopted the recommendation of the magistrate judge.

The case was tried to a jury that found Moss guilty. At sentencing, the district judge imposed a two level enhancement to Moss' base level offense for obstruction of justice because the court believed that Moss presented evidence at trial which contradicted evidence he presented pretrial. Moss was sentenced to 262 months imprisonment and 5 years supervised release. The judgment was entered on July 20, 1998, and Moss filed this timely appeal.

On appeal, Moss challenges the district court's determination that although the Speedy Trial Act had been violated, the dismissal of the first indictment should be without prejudice.[1] Likewise, Moss claims that the district

---

[1] We note that Moss could not immediately appeal the dismissal without prejudice of the first indictment because we would have lacked jurisdiction at that time. A dismissal without prejudice is not a "final order" within the meaning of 28 U.S.C. § 1291 that can be immediately appealed. *See Parr v. United States*, 351 U.S. 513, 516-519 (1956); *United States v. Bratcher*, 833 F.2d 69, 71 (6th Cir. 1987). A criminal case does not become final until the defendant is sentenced. *Parr*, 351 U.S. at 518. This circuit has held that a dismissal without prejudice for a speedy trial violation does not fall within any recognized exceptions to the finality requirement. *See Bratcher*, 833 F.2d at 72 (citing *Abney v. United States*, 431 U.S. 651 (1977))(double jeopardy); *Stack v. Boyle*, 342 U.S. 1 (1951) (reduction of bail prior to trial). The exception to the final order requirement only applies to "collateral orders" which "relate[] to

court should have dismissed his second indictment with prejudice for violating the Speedy Trial Act and the Speedy Trial Clause of the Sixth Amendment. Moss also appeals the district court's denial of his motion to suppress, claiming that the affidavit provided in support of the search warrant did not establish probable cause, and the two level sentence enhancement imposed for obstruction of justice. Because we conclude that the district court should have dismissed the original indictment with prejudice, we do not determine the remaining issues on appeal.

## II. ANALYSIS

Moss argues that the district court abused its discretion by determining that the dismissal of his original indictment should be without prejudice because the court did not carefully consider all of the factors set forth in Speedy Trial Act, 18 U.S.C. § 3162(a)(2). Moss claims that the dismissal should have been with prejudice because the Speedy Trial Act violation was caused by the district court's own neglect, the delay was lengthy, and the defendant suffered because of his two years of incarceration.

The Speedy Trial Act enumerates three factors that trial courts must consider when deciding whether to dismiss an action with or without prejudice: 1) the seriousness of the offense; 2) the facts and circumstances that led to the dismissal; and 3) the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice. 18 U.S.C. § 3162(a). In *United States v. Pierce*, 17 F.3d 146 (6th Cir. 1994), this circuit opined, "Because Congress has set forth specific factors to be

---

matters outside the stream of the main action and would not be subject to effective review as part of the final judgment in the action." *Parr*, 351 U.S. at 519. A dismissal without prejudice based on a speedy trial violation is not a collateral order because it is a "step toward final disposition of the merits of the case [that] will . . . be merged in [the] final judgment." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Such a dismissal only becomes appealable after the defendant has been convicted and sentenced.

intent to distribute it—were "serious." That conclusion is correct. *See, e.g.*, *United States v. Wright*, 6 F.3d 811, 814 (D.C. Cir. 1993) (concluding that distribution of fifty or more grams of cocaine base, distribution of five or more grams of cocaine base, and conspiracy to possess with intent to distribute and/or conspiracy to distribute fifty or more grams of cocaine base are all "serious" offenses for Speedy Trial Act purposes, even if they are somewhat "commonplace").

The district court's order then goes on to state that "the facts and circumstances surrounding the present case warrant a dismissal without prejudice." Unfortunately, the district court did not expand on this statement, and it provided no explanation for its failure to rule on Moss's motion to suppress. Finally, the district court concluded that "the reindictment of the Defendant will hamper neither the administration of justice nor the Speedy Trial Act." Again, the district court offered no explanation for this conclusion, apart from two sentences in which it suggested that Moss "has not shown that the length of the delay adversely affected his ability to defend himself at trial," and that as a result, Moss "suffers no prejudice as a result of the delay." The order, however, failed to make any mention of the fact that Moss had been in custody for over a year while his motion to suppress was under advisement.

## II.

Dismissal of the indictment is required for any violation of the Speedy Trial Act. *See* 18 U.S.C. § 3162(a)(2) (providing specifically that if a defendant "is not brought to trial within [the seventy-day time limit] as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant"). The only question for the court is whether the dismissal is to be with or without prejudice. As a number of courts have observed, the Speedy Trial Act as originally drafted would have required all dismissals to be with prejudice. *See, e.g.*, *United States v. Caparella*, 716 F.2d 976, 978-79 (2d Cir. 1983). The statute as actually enacted, however, makes dismissal without prejudice an option,

hearing so that both Moss and the government could prepare and file "responses"—apparently post-hearing memoranda. The district court agreed that the transcript would be filed by February 8, 1996, and required Moss and the government to file their "responses" by February 22, 1996 and March 1, 1996, respectively. Why the district court considered it necessary to receive post-hearing memoranda in order to decide such a routine motion is unclear. In any event, the Speedy Trial Act itself suggests rather strongly that the district court should not have let Moss and the government take an entire month to file them. *Cf. Moran*, 998 F.2d 1368, 1370-71 (6th Cir. 1993) (observing that the Speedy Trial Act "expressly excludes only the period 'from the filing of the [pretrial] motion through the conclusion of the hearing on, or other prompt disposition of, such motion.'" (quoting 18 U.S.C. § 3161(h)(1)(F)); 18 U.S.C. § 3161(h)(1)(J) (establishing thirty days as the presumptive maximum amount of time during which "any proceeding concerning the defendant" may reasonably be "under advisement by the court.").

A year passed, and the motion to suppress had still not been ruled on. Scheduled trial dates came and went, each rescheduled because the motion to suppress was still under advisement. On January 29, 1997—one day short of a year from the date of the hearing on the motion to suppress—Moss filed his motion to dismiss the indictment pursuant to the Speedy Trial Act. The government responded on March 4, 1997, conceding that the Speedy Trial Act required the indictment's dismissal, but requesting that the inevitable dismissal be without prejudice.

Despite the government's concession that the Speedy Trial Act required dismissal, the district court delayed ruling on Moss's motion to dismiss for over four more weeks. Finally, on April 2, 1997, the district court (which had still never ruled on the motion to suppress), entered a two-page order dismissing the indictment without prejudice. In its order, the district court concluded that the charges against Moss—possession of 79.5 grams of crack cocaine with the

considered, a district court that does not set forth written findings with regard to these factors has abused its discretion and will be reversed." 17 F.3d at 148 (*citing United States v. Taylor*, 487 U.S. 326, 336 (1989)). If those findings are set forth, however, the appellate court applies a "modified abuse of discretion standard." *United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir. 1992). Under this modified standard, the district court's factual findings will be reversed only if the findings are clearly erroneous. *Taylor*, 487 U.S. at 336. Because the judgment is only arrived at by considering and applying statutory criteria, which constitutes applying the law to the facts, the reviewing court is required to undertake a more substantive scrutiny to ensure that the judgment is supported in terms of the factors identified in the statute. *Id.* at 337. Nevertheless, if the reviewing court finds that the district court properly considered the statutory factors, the district court's "judgment of how opposing considerations balance should not lightly be disturbed." *Id.*

In deciding to dismiss the original indictment without prejudice, the district court in this case set forth a written order. The order provided that the charges against Moss, possession of 79.5 grams of cocaine base with intent to distribute, was "rightfully characterized as a serious offense." Moss does not dispute that cocaine possession is a serious offense. This circuit has categorically labeled drug offenses as serious. *See Kottmyer*, 961 F.2d at 572. Accordingly, the district court's consideration of the first statutory factor favors a dismissal without prejudice.

With respect to the facts and circumstances that led to the dismissal of the original indictment, the district court implied that Moss alone caused the delay. Instead of recognizing its own role in not issuing a ruling on Moss' motion to suppress–which had been taken under advisement for approximately 10 months–the court simply quoted from the unpublished opinion, *United States v. Pierce*, 1992 WL 71367, *3 (W.D. Mich.) *aff'd*, 17 F.3d 146 (6th Cir. 1994): "Defendants who passively wait for the speedy trial clock to run have [a lesser right] to dismissal with prejudice than do

defendants who unsuccessfully demand prompt attention." Unlike the district court in *Pierce* which weighed its role in causing delay against the role of the defendant in causing delay, the district court in this case failed to acknowledge that the reason for ten months of the delay was that the motion to suppress was under advisement. Nor did the Court acknowledge that under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(J), only thirty days are excludable from the speedy trial clock for a motion taken under advisement. Evidently, the court was aware that the motion was still under advisement, as the trial was adjourned a number of times for that reason. The court also failed to mention that the Government also had not alerted the court to the speedy trial clock.

*Pierce* is also distinguishable from this case because the *Pierce* court was waiting to receive information from the defendant, while in this case Moss was waiting to receive a substantive opinion from the court. No evidence suggests that Moss caused any delay from the time the motion was taken under advisement until the time he filed the motion to dismiss for violation of the Speedy Trial Act. Although Moss could have informed the court of the delay, a defendant has no duty to bring himself to trial and has no duty to bring any delay to the court's attention. *Kottmyer*, 961 F.2d at 572. *Cf. Barker v. Wingo*, 407 U.S. 514, 527 (1972) (analyzing the Sixth Amendment right to a speedy trial). Without a proper evaluation of the roles each party and the court played in causing the delay, the district court could not adequately consider this statutory factor.

As to the last statutory factor, the district court found that reprosecution would not hinder the administration of the Speedy Trial Act, nor the administration of justice because Moss had not shown that the delay would prejudice him at trial. The court failed to address that the ten month delay in rendering its opinion on the motion to suppress was approaching the point of being presumptively prejudicial. *Cf. United States v. Mundt*, 29 F.3d 233, 235 (6th Cir. 1994) (analyzing the Sixth Amendment right to a speedy trial (citing

guaranteed right to a speedy trial. *See United States v. Crane*, 776 F.2d 600, 602 (6th Cir. 1985).

Although the Act is more commonly implicated when the prosecutor causes the delay, the text of the statute clearly expresses Congress's concern that, without prodding, judges would not bring defendants to trial with sufficient speed. *See* 18 U.S.C. § 3161(h)(8) (requiring dismissal when a violation of the Speedy Trial Act is attributable to the court). The result was a statute that establishes a seventy-day deadline to bring defendants to trial, and makes this deadline a ticking time bomb. This deadline, however, is not completely inflexible. A district court may, as necessary, stop the Speedy Trial Act "clock" temporarily by entering an order upon appropriate findings that the "ends of justice" will be served by the delay and that the ends of justice "outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

What a district court may not do, however, is allow the deadline to expire and then later attempt to rationalize the delay as having been required by the interests of justice. *See United States v. Crane*, 776 F.2d 600, 606 (6th Cir.1985) ("A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable delay continuance before the delay occurred.") (citation omitted); *United States v. Moran*, 998 F.2d 1368 (6th Cir. 1993) ("[P]ost-hoc rationalization is not permitted.").

Moss filed his motion to suppress on November 8, 1995. There was nothing unusual or arcane about the motion. It was simply a motion to suppress evidence in a drug case, predicated on the police officers' purported failure to "knock and announce" their presence before entering his house to execute their search warrant. Not counting the signature page, the motion's supporting brief was five pages long.

The district court conducted its hearing on January 30, 1996, and then took the motion under advisement. Moss's attorney asked the court to delay filing the transcript of the

---

### CONCURRENCE

---

RONALD LEE GILMAN, Circuit Judge, concurring in the judgment.  Ordering that a serious drug indictment be dismissed with prejudice solely because of a procedural violation is highly unpalatable.  But just as enforcement of the rules established in *Miranda* and in search and seizure cases sometimes requires the exclusion of critical evidence for the prosecution—because there is no other adequate means of deterring unacceptable governmental behavior—the gross violation of the Speedy Trial Act in this case requires that the indictment be dismissed with prejudice.  I believe that no other outcome would be consistent with the effective enforcement of the Act.

### I.

The Speedy Trial Act, 18 U.S.C. §§ 3161-3174, was Congress's response to, among other things, public outrage over crimes committed by dangerous offenders who were already facing trial on other charges, but were free on bail pending the resolution of what Congress considered needlessly protracted pretrial proceedings.  *See, e.g.*, *United States v. Leppo*, 634 F.2d 101, 104 (3d Cir. 1980) (discussing the history of the Speedy Trial Act, and noting that one of the Act's principal purposes was to help reduce the risk of recidivist offenses by defendants while out on bail).  *See also United States v. Hastings*, 847 F.2d 920, 924 (1st Cir. 1988) ("A speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of the prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which he may flee, commit other crimes, or intimidate witnesses.") (quoting ANTHONY PARTRIDGE, LEGISLATIVE HISTORY OF TITLE I OF THE SPEEDY TRIAL ACT OF 1974 12 (1980)).  Another purpose of the Speedy Trial Act, of course, was to provide further protection for defendants' constitutionally-

*Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992))).  The district court also neglected to address any non-trial prejudice suffered by Moss.  In *Taylor*, the Supreme Court, quoting *Barker*, held:

> The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty:
>
> "[I]nordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'"

*Taylor*, 487 U.S. at 340 (quoting *Barker*, 407 U.S. at 537).  In this case, the district court failed to consider the impact on Moss' liberty.  Moss had been incarcerated for two years, including the time he was awaiting the decision of the court on the motion to suppress, yet the court failed to mention his incarceration and its impact on his life circumstances.

Nor did the district court adequately address the impact reprosecution would have on the administration of the Speedy Trial Act.  The purpose of the Speedy Trial Act is not only to protect a defendant's constitutional right to a speedy trial, but also to serve the public interest in bringing prompt criminal proceedings.  *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993) (citing *United States v. Noone*, 913 F.2d 20, 28 (1st Cir. 1990)).  Whenever the "government--for whatever reasons--falls short of meeting the Act's requirements, the administration of justice is adversely affected."  *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992) (quoting *United States v. Hastings*, 847 F.2d 920, 926 (1st Cir. 1988) (finding that the legislative history of the Speedy Trial Act demonstrates its importance in advancing both the public and private interests in fair and expeditious trial of criminal cases)).  While not all violations of the Speedy Trial Act

warrant a dismissal with prejudice, the purposes of the Act would be thwarted if courts do not adjust their day-to-day procedures to comply with its requirements. *See United States v. Clymer*, 25 F.3d 824, 832 (9th Cir. 1994).

On the record as a whole, we find the district court's decision to dismiss the original indictment without prejudice clearly erroneous. Although the district court in this case issued a written opinion, it did not adequately address two of the three statutory factors set forth in the Speedy Trial Act. The decision of the district court is reversed and remanded for an order dismissing the action with prejudice.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court.

### CONCURRENCE

ALICE M. BATCHELDER, Circuit Judge, concurring. I concur in both Judge Hood's opinion and Judge Gilman's concurrence in this matter, but I write separately to emphasize one additional point.

I wish to make the record perfectly clear that the district court judge whose delay in responding to Moss' motion to suppress we today rule was excessive is not the same district judge who presided over the prosecution of Moss under the second indictment. While it is true that, in light of our ruling today, the second district court should not have allowed the prosecution to go forward under the second indictment, the true error lies with the district court which, inexplicably, allowed Moss' motion to suppress to languish unanswered on the docket for many months in clear violation of the Speedy Trial Act. It is the first district court's omission that causes us to reach the unpalatable result we announce today.